UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
STEPHEN HAUSER, JOHN SANTAGATA,      )
NORMAN VERMETTE, JOHN PRIOR, AND     )
ANTHONY LUCCA,                       )
                                     )
                Plaintiffs,          )    C.A. No. 08-428 S
     v.                              )
                                     )
STATE OF RHODE ISLAND                )
DEPARTMENT OF CORRECTIONS,           )
                                     )
                Defendant.           )
```

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This dispute arises from an allegation that the State of Rhode Island Department of Corrections (DOC) fails to adequately compensate five officers who care for police dogs. The State moves to dismiss Plaintiffs' two claims: violation of the Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1 et seq.; and violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. After careful consideration, the Court concludes that no private right of action exists under the Rhode Island Minimum Wage Act, and that the State has not waived its sovereign immunity as to the FLSA claim.

I.  Background

Stephen Hauser, John Santagata, Norman Vermette, John Prior and Anthony Lucca are correctional officers who perform "K9" duties. They transport and care for the dogs, including boarding,

feeding, exercising, bathing, and grooming (even while in "non-duty" status).  In November of 2008, Plaintiffs sued in Rhode Island state court, claiming the State had failed to appropriately compensate them for canine-related work during off-duty hours.[1] The State promptly removed the two-count action to this Court per 28 U.S.C. § 1441, urging federal question jurisdiction under 28 U.S.C. § 1331.  Following an initial conference, the State filed the instant motion.

II.  Count I: Rhode Island Minimum Wage Act

The State first maintains Plaintiffs cannot state a claim for overtime violations because R.I. Gen. Laws § 28-12-1 et seq. provides no private, independent cause of action for an aggrieved employee.  Thus, the State argues, under the statute, only the Rhode Island Department of Labor & Training, Division of Labor Standards ("DOL") has the authority to prosecute a violation of the state wage law.  Plaintiffs, of course, disagree with this interpretation and suggest that the administrative scheme in § 28-12 by which an aggrieved employee may claim a wage violation at the DOL is an optional, not exclusive, remedial track.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court determines whether the complaint states any claim upon which relief can be

---

[1] Though not relevant to the issues here, by way of background a 1996 agreement exists between the DOC and the Rhode Island Brotherhood of Correctional Officers regarding compensation for "K9" duties.  Plaintiffs claim the Agreement is unreasonable.

granted. In so doing, the Court construes the complaint in the light most favorable to Plaintiffs, taking all sufficiently precise factual allegations as true and giving Plaintiffs the benefit of all reasonable inferences. See Bell Atl. Corp. v. Twombley, 550 U.S. 544, 559 (2007); Buck v. Am. Airlines, Inc., 476 F.3d 29, 32-33 (1st Cir. 2007). To pass through the initial gauntlet, the complaint must allege "a plausible entitlement to relief." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombley, 550 U.S. at 559).

While the Minimum Wage Act is silent as to whether an individual private right of action exists, it does speak to enforcement. Section 28-12-13 provides: "Responsibility for enforcement - [t]he provisions of this chapter shall be carried out by the division of labor standards"; and § 28-12-14(7) provides: "Enforcement powers - [t]he director or the commissioner or any authorized representative of either shall have the authority to: [b]ring all actions, suits, complaints, and prosecutions for the violation of any of the provisions of this chapter."

These provisions, combined with the lack of an express private right to sue, indicate that the General Assembly did not intend to provide an individual right of action to aggrieved employees. See Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies,

a court must be chary of reading others into it."); In re John, 605 A.2d 486, 488 (R.I. 1992) (noting that when a statute "does not plainly provide for a private cause of action, such a right cannot be inferred"); Narragansett Pellet Corp. v. City of East Providence ex rel. Fitzgerald, C.A. No. 06-464 ML, 2007 WL 2821538, at *6-7 (D.R.I. Sept. 25, 2007) (no private right of action where statute prescribed a particular enforcement process). There can be little doubt that had the General Assembly deemed it appropriate or necessary to afford employees a private right of action against employers to enforce the minimum wage law, it would have expressly done so. Compare, e.g., R.I. Gen. Laws §§ 28-5-24.1, 28-29 (setting forth framework for individual claims under Fair Employment Practices Act). Absent any indication from the statute itself or in the legislative history that this is what the legislature intended, it would be clearly inappropriate to create such a right by judicial fiat.[2]

Plaintiffs seek to escape the bonds of this statutory straightjacket through a different chapter, chapter 14 (Payment of

---

[2] The provisions in §§ 28-12-15, 16, 17 and 18 that wage violations are punishable by fine are consistent with this interpretation. See Stebbins v. Wells, 818 A.2d 711, 716 (R.I. 2003) (declining to imply existence of private right of action for damages suit where legislature provided for a civil fine); Salvas v. Wal-Mart Stores, Inc., 893 N.E.2d 1187, 1215 n.70 (Mass. 2008) (no private right of action to enforce section of state labor statute); Narragansett Food Servs., Inc. v. Rhode Island Dep't of Labor, 420 A.2d 805, 806 (R.I. 1980) (resolving dispute over interpretation of § 28-12-4.1 where DOL enforced overtime provision against employer).

4

Wages), which, upon a cursory glance, appears to create a private right of action for chapter 12 challenges such as these officers' overtime complaint. Plaintiffs point to § 28-14-18.1 (Relief and damages) ("A person who alleges a violation of this chapter may bring a civil action.") and § 28-14-18.4 (Extension of protection) ("The protections set forth in § 28-14-18 and the relief and damages for violations set forth in §§ 28-14-18.1 and 28-14-18.2 shall also apply to chapters 3, 6, <u>12</u>, and 18 of this title.") (emphasis added). This argument, however, glosses over the precise language of these sections. Read in their appropriate context, it becomes clear that they apply only to whistleblowing actions. As the Legislative Council to the General Assembly explained, the provisions were added to "provide protections <u>to employees who report violations of labor laws or regulations</u>." <u>See</u> "Explanation By The Legislative Council Of An Act Relating To Labor And Labor Relations -- Protection Of Employees," attached to 1992 R.I. Pub. Laws 890 (explanation available electronically) (emphasis added). The "Extension of protection" does not create a private cause of action with respect to any and all violations of the listed chapters; rather, it allows employees who complain about or report violations of those listed chapters (e.g., Employment of Women and Children, Wage Discrimination Based on Sex, and Minimum Wages) and are retaliated against by their employers to sue as whistleblowers under § 28-14-18 and 18.1. This is in essence what Senior Judge

Lagueux held in <u>Trs. of the Local Union No. 17 Sheet Metal Workers' Apprenticeship Fund v. May Eng'g Co.</u>, 951 F. Supp. 346, 350-51 (D.R.I. 1997) (§ 28-14-18.1 was not intended to broadly apply to wage payment violations; a private right of action is available "only for violations of the whistleblowing protection set forth in the immediately preceding and following sections."); <u>see</u> <u>also</u> § 28-14-18.1(d) (employee [whistleblower] must show by clear and convincing evidence that a report of a violation was about to occur). Plaintiffs offer no compelling reason for this Court to disagree with Judge Lagueux's sound statutory interpretation, which the plain language and context support. The lack of a private right of action thus bars Count I and it must be dismissed.

III. Count II: FLSA

Count II presents a more nuanced issue. Congress enacted the FLSA to "achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]." <u>Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590, 602 (1944). The State concedes canine work is compensable,[3] but maintains the FLSA claim is barred by Eleventh Amendment sovereign immunity.

At the outset, it is beyond serious dispute that under the Supreme Court's landmark decision in <u>Seminole Tribe of Fla. v.</u>

---

[3] <u>See</u> <u>Leever v. City of Carson</u>, 360 F.3d 1014, 1017 n.1 (9th Cir. 2004). Neither <u>Leever</u> nor any case cited therein involved canine care FLSA claims against a state agency or department.

Florida, 517 U.S. 44 (1996) a state enjoys Eleventh Amendment immunity from suit in federal court for an FLSA claim.[4] See Abril v. Virginia, 145 F.3d 182, 185-89 (4th Cir. 1998) (affirming dismissal of FLSA action by state prison employees); Powell v. Florida, 132 F.3d 677, 678 (11th Cir. 1998) (per curiam) (affirming dismissal of FLSA claim for unpaid wages against state); Quillin v. Oregon, 127 F.3d 1136, 1138-39 (9th Cir. 1997) (holding that federal courts lack jurisdiction over FLSA claims against states absent waiver of immunity); Mills v. Maine, 118 F.3d 37, 48-49 (1st Cir. 1997) (rejecting argument that Congress properly abrogated state immunity under FLSA); Raper v. Iowa, 115 F.3d 623, 624 (8th Cir. 1997) (affirming dismissal of FLSA action by state employees for unpaid overtime); Balgowan v. New Jersey, 115 F.3d 214, 217-18 (3d Cir. 1997) (refusing to exercise jurisdiction over FLSA claim against state); Wilson-Jones v. Caviness, 99 F.3d 203, 206-11 (6th Cir. 1996) (barring action by state employees under FLSA)

The issue in this case, however, is not so easily dispatched because of an interesting procedural wrinkle: whether the State waived its Eleventh Amendment immunity as to an FLSA claim by

---

[4] In broad terms, the Eleventh Amendment immunizes a State defendant from actions brought against it in federal court. See U.S. Const. Amend. XI; Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (immunity extends to suits against state agencies). The Eleventh Amendment and Congress's power to abrogate are topics on which countless cases have focused. Because the crux of this dispute is the removal and waiver, in the interest of brevity the Court will not recap this long line of jurisprudence.

removing the action from Rhode Island Superior Court to federal court?

A state may consent to suit by a clear declaration of its intention to submit itself to federal court jurisdiction, and may waive immunity to suit by voluntarily invoking federal court jurisdiction. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 675 (1999); Lombardo v. Pennsylvania Dep't of Pub. Welfare, 540 F.3d 190, 195-96 (3d Cir. 2008). The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). There is no suggestion here that Rhode Island expressly consented to be sued for an FLSA violation in federal court. Rather, Plaintiffs say the State's removal voluntarily invoked jurisdiction, constituting an implied waiver of immunity.

The leading decision on "waiver by removal" is Lapides v. Bd. of Regents of Univ. Sys. Of Georgia, and it is instructive but not on all fours with the present circumstances. 535 U.S. 613 (2002). Lapides discussed whether a state that removes a claim to federal court waives Eleventh Amendment immunity when the state already consented to suit for the claim in its own state court. Id. at 616-17. The Supreme Court held that it did, because otherwise the state would unfairly regain in a federal forum an immunity which it voluntarily abandoned in state court. Id. Importantly, though,

8

the decision did not directly address the effect of removal of a claim as to which a state <u>retained</u> immunity in its own state court -- arguably the situation here, and the subject of post-<u>Lapides</u> debate. <u>See, e.g.</u>, <u>Stewart v. North Carolina</u>, 393 F.3d 484, 490-91 (4th Cir. 2005) (discussing scope of <u>Lapides</u> and holding a state does not waive immunity by removal when it would have been immune from suit for the same claim in state court); <u>Boone v. Pennsylvania Office of Vocational Rehab.</u>, 373 F. Supp. 2d 484, 499-500 (M.D. Pa. 2005) (barring ADA claims against state despite removal because state retained immunity from suit under the ADA in state court).[5]

Under <u>Lapides</u>, the question here, then, is whether Rhode Island retained its immunity from suit as to an FLSA claim in its own courts. If it did, removal triggers no concerns about inconsistency or unfair litigation gamesmanship because in either forum, the State maintains its immunity. As a starting point, under <u>Alden v. Maine</u> the State is correct that it is immune from suit in its own court under the FLSA absent consent or waiver. 527 U.S. 706, 755-57 (1999).[6] Thus the key issue is Plaintiffs'

---

[5] Needless to say, waiver by litigation conduct is by no means automatic. <u>See also</u> <u>Rhode Island Dep't of Envtl. Mgmt. v. United States</u>, 304 F.3d 31, 48-50 (1st Cir. 2002) (discussing waiver by litigation conduct and policies that "ordinarily motivate the [waiver] rule"); <u>Taylor v. United States Dep't of Labor</u>, 440 F.3d 1, 7-8 (1st Cir. 2005) (holding state did not waive immunity by requesting ALJ hearing because it regained no advantage).

[6] <u>Alden</u> involved a federal FLSA claim by probation officers against the state of Maine. The Supreme Court held Congress cannot abrogate Eleventh Amendment immunity in a federal statute by

9

contention that Rhode Island waived this <u>Alden</u> immunity in its own courts.

Waivers of immunity must not be lightly implied and must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." <u>Edelman v. Jordan</u>, 415 U.S. 651, 673 (1974) (internal citation and quotation omitted); <u>see</u> <u>Andrade v. Rhode Island</u>, 448 A.2d 1293, 1295 (R.I. 1982) (noting courts must presume the legislature did not intend to "deprive the state of any part of its sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language"). The Court has not identified, nor have the parties offered, any Rhode Island state case addressing waiver of immunity as to a wage claim.[7]

Plaintiffs first suggest the State made itself amenable to suit for claims "identical" to the FLSA via the Rhode Island Minimum Wage Act, so "it does not make much sense to allow the

---

allowing states to be sued without their consent in state court. <u>Alden v. Maine</u>, 527 U.S. 706, 712 (1999). Rather, the core principle of sovereign immunity requires such a waiver come from the state (not federal) government.

[7] The closest authority is <u>Bergemann v. Rhode Island</u>, 958 F. Supp. 61 (D.R.I. 1997). In <u>Bergemann</u>, decided before <u>Alden</u>, Judge Lisi adopted the Magistrate's recommendation that the State retained immunity for an FLSA claim in federal court under <u>Seminole Tribe</u> and rejected the argument that the Rhode Island Tort Claims Act provided a waiver. <u>Id.</u> at 69 ("Complaints as to the breach of the terms and conditions of public employment, a uniquely governmental activity, is not an action sounding in tort.").

State to ignore parallel federal law." They claim "there is no question that the state courts permit suits against the State under the Act." (See Pl.'s Obj. to M. to Dismiss 8 (Doc. No. 8).) But there is indeed a question. As detailed above, the statute lacks express consent by the State to be sued for wage violations. Compare Anthony v. Iowa, 632 N.W.2d 897, 900-02 (Iowa 2001) (rejecting state's immunity claim under Alden to FLSA action in state court where state wage and labor scheme provided express consent to be sued). The fact that Rhode Island's wage statute excludes some, but not all, state employees from the overtime provisions (arguably suggesting all other state employees are subject to the provisions) does not mean the State intended to make itself amenable to suit for those claims. And while it may well be the case that the State could be subject to an action in its own courts by the Rhode Island DOL, or an FLSA action by the Secretary of Labor in federal court, this is not a substitute for a clear and unequivocal waiver of immunity for private causes of action. The bottom line is that the simple enactment of wage provisions reflecting or mirroring the FLSA, without more, is too thin a reed on which to find clear waiver. See Jarrett v. Alexander, 235 F. Supp. 2d 1208, 1215 (M.D. Ala. 2002) (discussing waiver of immunity for FLSA claim in federal court where state did not waive immunity merely because it "incorporated portions of the FLSA or its regulations into state law"); Crawford v. Lexington-Fayette Urban

County Gov't, No. 06-299-JBC, 2007 WL 101862, at *2-3 (E.D. Ky. Jan. 10, 2007) (refusing to find waiver of immunity simply because state wage law broadly defined "employer" and "employee").

Finally, Plaintiffs urge "waiver by necessary implication." This, they claim, comes from the fact that sovereign immunity in general has been "obliterated" for many tort and employment-related claims in Rhode Island -- creating a landscape "vastly" different than the one in Maine, which was found not to constitute waiver in Alden.

There is no question that in some circumstances Rhode Island has explicitly waived its sovereign immunity. See, e.g., R.I. Gen. Laws § 9-31-1 (governmental tort liability). But no such explicit waiver exists here, and the cases on which Plaintiffs rely for implied waiver are very situation-specific and fail to support this broad, so-called "obliteration" of immunity. See, e.g., Pellegrino v. Rhode Island Ethics Comm'n, 788 A.2d 1119, 1123-25 (R.I. 2002) (state impliedly waived immunity by providing for compensation to commission members for attendance at meetings and then refusing to pay, because disallowing recovery would give statute a "mere nugatory existence"); Donnelly v. Town of Lincoln, 730 A.2d 5, 10 (R.I. 1999) (town not insulated from prejudgment interest award in workers compensation case because it voluntarily joined workers' compensation system) (emphasis added); Capital Props., Inc. v. State, 749 A.2d 1069, 1081 (R.I. 1999) (over city's protest, state

Case 1:08-cv-00428-S-DLM   Document 9   Filed 08/06/09   Page 13 of 14 PageID #: 69

could waive immunity and bring declaratory judgment action to determine contractual obligations).[8]

In sum, Rhode Island is not unlike many states that pick and choose what classes of suits to permit, and there is nothing wrong with such a selective practice: "To the extent Maine has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit." Alden, 527 U.S. at 758. Nothing in Rhode Island's "landscape" or wage laws justifies finding waiver of immunity by necessary implication. See Reagan Constr. Corp. v. Mayer, 712 A.2d 372, 373 (R.I. 1998) ("When a statute purporting to waive any aspect of the state's sovereign immunity is examined, the language of the statute must be closely parsed and strictly construed.").

Consequently, because the State did not consent to suit or waive its Alden immunity to be sued in its courts under the FLSA, removal does not waive its Seminole Tribe immunity in federal court. The result is harsh but could be easily changed with a stroke of the legislative pen, if so desired. See Rodriguez v.

---

[8] Plaintiffs point to Evans v. Rhode Island Dep't of Bus. Regulation, No. Civ. A. 01-1122, 2004 WL 2075132 (R.I. Super. Aug. 21, 2004), which held that a state agency was not immune from suit under Rhode Island's civil rights act. Suffice it to say the rationale in Evans for a tort-based claim does not persuade the Court that a similar result is appropriate here, especially where Evans was explicitly based on direction from the Rhode Island Supreme Court as to RICRA's broad scope and across-the-board protection.

Puerto Rico Fed. Affairs Admin., 435 F.3d 378, 380 (D.C. Cir. 2006) ("Taken together, Seminole Tribe and Alden mean that state employees no longer have any 'court of competent jurisdiction,' 29 U.S.C. § 216(b) [FLSA], in which to sue their employers for FLSA violations.").[9]

IV. Conclusion

For the foregoing reasons, Count I is DISMISSED without prejudice because of a lack of a right of action and Count II is DISMISSED without prejudice because of a lack of subject matter jurisdiction.

IT IS SO ORDERED.

_W Smm_

William E. Smith
United States District Judge
Date: 8/4/09

---

[9] For additional discussion, see Melinda Herrera, Fair Labor Standards Act and Sovereign Immunity: Unlocking the Courthouse Door for Texas State Employees, 32 St. Mary's L.J. 269 (2001) and Brent W. Landau, State Employees and Sovereign Immunity: Alternatives and Strategies for Enforcing Federal Employment Laws, 39 Harv. J. on Legis. 169 (2002).

14